IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Michael S. Gilbert, | : | |
| Plaintiff | : | Case No. 2:04-cv-13 |
| v. | : | Judge Graham |
| Ohio Dept. of Rehabilitation & Correction, *et al.*, | : | Magistrate Judge Abel |
| | : | |
| Defendants | | |

| | | |
|---|---|---|
| Michael S. Gilbert, | : | |
| Plaintiff | : | Case No. 2:04-cv-158 |
| v. | : | Judge Graham |
| Correction Reception Center, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

**OPINION AND ORDER**

Plaintiff Michael S. Gilbert filed several actions against numerous defendants alleging they discriminated against him in his employment with the Ohio Department of Rehabilitation and Correction ("ODRC") because of his race in violation of Title VII and 42 U.S.C. § 1981. This matter is before the Court on defendants Ginny Lamneck and John Fausnaugh's February 9, 2006, motion for summary judgment (doc. 82) and plaintiff's August 30, 2006 motion for reconsideration (doc. 104).

1

Neither the amended complaint or plaintiff's responses in opposition to defendants' motion for summary judgment clearly identifies which claims and alleged conduct are attributable to which of the two remaining defendants. The amended complaint appears to assert claims for disparate treatment based on failing to promote plaintiff and disciplining plaintiff more harshly than his white counterparts and eventually leading to his termination. The amended complaint further asserts a claim for a hostile work environment, also based on the manner in which discipline was imposed, and retaliation for Gilbert exercising his civil rights. However, it is simply unclear which claims Gilbert intends to assert against each particular defendant. Therefore, for the purposes of this Order, the Court has considered each claim against each defendant. Because Gilbert has failed to produce any admissible evidence to support his claims of employment discrimination because of his race, defendants Ginny Lamneck and John Fausnaugh's February 9, 2006, motion for summary judgment (doc. 82) is GRANTED.

Background. Mr. Gilbert, an African American, was employed as a corrections officer at the Corrections Reception Center ("CRC") for ODRC from November 1993 until he was terminated in January 9, 2003. Gilbert Dep. 54; Defs. Exhs. 1 & 25. Defendant Lamneck is the current warden of the CRC, and defendant Fausnaugh is a CRC investigator.

Until mid-1994, Gilbert's duties primarily were to oversee the inmates incarcerated at ODRC. In August 1994, he was promoted to a teacher position and was employed at the Montgomery Education and Pre-Release Center. Gilbert Dep. 55.  In November 1994, Gilbert received a mid-probationary evaluation, and he was rated "below" in five out of nine categories. The comments indicated that Gilbert was frequently tardy, engaged in poor time management, and demonstrated a lack of student understanding.  Gilbert was placed on a performance improvement

plan. Defs. Dep. Exh. 5. Gilbert did not recall whether or not he grieved the performance review. Gilbert Dep. 82. In April 1995, plaintiff was demoted to the position of corrections officer because his performance as a teacher failed to improve. Defs. Dep. Exhs. 6 & 2.

On November 17, 1994, Gilbert was suspended for one day as a result of being tardy four times within a six-month period. Defs. Dep. Exh. 11. On July 22, 1996, Gilbert admitted falsifying the unit log he was required to complete and received a five-day suspension. Defs. Dep. Exh. 14.

On January 2, 1997, Gilbert received a written reprimand for not having sufficient leave to cover his absence. Defs. Dep. Exh. 15. On May 19, 1997, Gilbert received a written reprimand for a dress code violation. Defs. Dep. Exh. 16. On June 11, 1997, Gilbert was reprimanded for being absent without leave. Defs. Dep. Exh. 17. On December 18, 1997, Gilbert was reprimanded for being tardy to his shift on two occasions. Defs. Dep. Exh. 18. On July 21, 1998, Gilbert received a five-day suspension for calling off after his shift had begun, leaving his post before the end of his shift, and threatening another employee. Defs. Dep. Exh. 20.

On August 17, 2002, plaintiff received an oral reprimand for not following post orders; the reprimand was signed by defendant Ginny Lamneck. Defs. Dep. Exh. 22.

On January 2, 2003, Gilbert was terminated for failing to deliver mail either at all or in a timely manner, smuggling a tape recorder into the institution to record a EEO mediation, being insubordinate towards his captain, being absent from his post for over an hour, and disrupting inmate activities. Defs. Dep. Exhs. 25 & 29.

<u>Allegations in the Complaint</u>. Plaintiff's only remaining claims arise under 42 U.S.C. § 1981. The complaint alleges that defendants (1) maintained a racially hostile and offensive work environment; (2) denied qualified African American employees advancement, promotional

opportunities and equal compensation; (3) disciplined plaintiff and other minorities more severely and frequently; (4) retaliated against plaintiff for defending his civil and human rights; (5) disciplined plaintiff more severely than white employees who committed the same offense; (6) used the disciplinary process as a deceptive method to create a fictitious investigation and hearing to cause plaintiff extreme humiliation and embarrassment before his peers and the inmates; and, (7) created false situations and accusations against plaintiff. The complaint further alleges that defendants placed plaintiff under physical escort by supervisors and paraded him around the prison camp to and from his post in the same manner officers escort inmates because a co-worker claimed that plaintiff was a threat to the institution. Officer Shorg and Officer Pelfrey allegedly stated that plaintiff had a hit list with names of numerous white employees and supervisors on it. Plaintiff's white supervisors confiscated plaintiff's sheet cake because of the belief that plaintiff put an unknown substance in it. Although plaintiff was questioned by the State Highway Patrol, the cake was never tested.[1]

Defendants' Arguments. Defendants maintain that Gilbert has no direct or indirect evidence of discrimination on the basis of race or color. Defendants maintain that Gilbert cannot point to any similarly situated comparables in order to establish a *prima facie* case of discrimination. According to defendants, to be deemed similarly situated, the comparable employee must have been subject to "the same standards and have engaged in the same conduct without such differentiating or mitigating

---

[1] Plaintiff could not recall any of the details of this incident during his deposition. Defendant Fausnaugh testified that while Gilbert was on administrative leave, he was called into a meeting with Fausnaugh for an investigation. Gilbert brought a sheet cake with him to that meeting. Warden Saunders feared that Gilbert had adulterated the cake with a substance such as a laxative and had the cake confiscated. Fausnaugh Dep. 23-45.

circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 583 (6th Cir. 1992).

Defendants also argue that Gilbert has no evidence of discrimination as a result of not being selected for the teacher position because Gilbert does not even know who was selected for the position. Furthermore, defendant Lamneck was not employed at CRC at the time Gilbert applied for the position. Defendants maintain that Gilbert had an unsuccessful history as a teacher in 1994-95, and it was reasonable that he was not selected for that same position again.

Defendants maintain that plaintiff cannot make a *prima facie* case based on a hostile work environment because his work environment was not objectively hostile and Gilbert cannot point to any incidents that occurred because of race. Defendants contend that plaintiff was disciplined sporadically over the period from 1994 to 2002, and the reasons for the discipline were clearly explained. Furthermore, defendants argue that Gilbert has presented no evidence that he grieved the incidents or that management was specifically targeting him. Defendants maintain that the alleged harassment was not overtly racial nor motivated by race.

Finally, defendants maintain that there is no basis for personal liability as there was no personal involvement by either of the defendants in an alleged discriminatory action. Gilbert alleges that Lamneck, who at the time was Deputy Warden of Operations, is liable because she should have known what was happening to him. However, defendants respond that liability may not be imposed on the basis of *respondeat superior* in § 1981 actions.

<u>Plaintiff's Arguments</u>. As a preliminary matter, plaintiff's August 30, 2006 motion for reconsideration of the Court's decision denying plaintiff additional time pursuant to Rule 60(b) to obtain new evidence of defendants blacklisting conspiracy and active conduct; plaintiff's request

5

for Court to compel defendant and witnesses to answer and return notarized affidavits to plaintiff; plaintiff's request for the Court to hold defendants and witnesses in contempt for non-compliance with Court sanctioned subpoenas to complete and return affidavits; plaintiff's request for Court to accept into record missing notarized page and signature to be added to original affidavit submitted by plaintiff (doc. 104) is DENIED. Defendants' motion for summary judgment was filed on February 9, 2006. Throughout the course of this litigation, the Court has provided plaintiff with several extensions of time, and plaintiff has had ample opportunity to obtain discovery. Plaintiff continues to seek discovery on issues that are not properly before this Court, including whether defendants are presently engaged in a conspiracy to prevent Gilbert from obtaining new employment. Consequently, plaintiff's motion for reconsideration (doc. 104) is DENIED.

In his March 6, 2006 response in opposition to defendants' motion for summary judgment (doc. 90), Gilbert argues that defendants failed to provide him with critical evidence and that he has not had sufficient time to adequately respond to the motion for summary judgment. Plaintiff attached the following documents to his March 6, 2006 response in opposition to defendants' motion for summary judgment to demonstrate his good character, education, and experience:

- A handwritten document dated 10/05/2002 that states plaintiff's state applications demonstrate his diligent attempt to obtain a promotion with ODRC;

- A July 17, 2002 handwritten note indicating plaintiff's interest in two position vacancies with the CRC;

- An Ohio Civil Service Application signed and dated by plaintiff on October 5, 2002;

- A February 28, 2006 letter to the Court from Shirley Ivory, a professor at Sinclair Community College, indicating her experience with plaintiff as a teacher;

- A March 3, 2006 letter to the Court from Mrs. San J. Copprue, who worked with plaintiff at Montgomery Education and Pre-Release Center in Dayton, Ohio;

- A March 3, 2006 reference letter from Robin Moore-Cooper, the Coordinator of Education Support Services at Sinclair Community College;

- A February 28, 1997 reference letter from Audrey J. White, Pre-service Training Supervisor at the Corrections Training Academy of ODRC;

- A February 20, 1995 reference letter from Eve Davis, an instructor at Central State University;

- A July 29, 1992 reference letter from Emmett C. Orr, Assistant Dean for Administrative and Fiscal Services at Wright State University;

- An October 28, 1991 letter from K. Michael Crumley, Assistant Superintendent for Springfield City Schools, confirming information provided by Gilbert concerning a scholarship contest;

- An October 24, 1991 letter from Dale A. Henry, the Assistant Mayor of Springfield, regarding a dinner and fashion show;

- A February 9, 1990 letter from Barbara Andrews, a registrar at the National Afro-American Museum and Cultural Center, thanking plaintiff for his donation of a commemorative t-shirt to the museum;

- A deed of gift from the National Afro-American Museum and Cultural Center;

- A March 22, 1996 letter from Fred Hall, III supporting plaintiff's efforts to develop a program teen center;

- A poem from an inmate and student of plaintiff's;

- A copy of an inscription in a book thanking plaintiff for proofread-ing the author's book;

- An August 7, 1992 newspaper article from the Dayton Daily News noting that plaintiff will be receiving a "New Talent" award for his fashion designs;

- Several newspaper articles describing plaintiff's line of swimwear;

- A copy of a certificate indicating that plaintiff completed OCSEA Steward Training Class;

- A copy of plaintiff's teaching certificate for the State of Ohio from 1996 through 2000;

- A copy of a certificate from the United States Air Force indicating that he completed 584 hours radiologic specialist training;

- A copy of plaintiff's teaching certificate for the State of Ohio from 1991 through 1995;

- Copies of certificates from ODRC indicating that plaintiff completed "8 Hour Instructional Skills, " "Court Procedures," and "Policy Writing," training;

- A certificate of appreciation from Franklin Middle School;

- A copy of a certificate recognizing plaintiff as a professional member of the Correctional Education Association;

- A copy of a certificate from the Atlanta Society of Radiologic Technologists for attending the 15th Student and Graduate Technologist Seminar from February 29 through March 3, 1992; and,

- A certificate from the Zeta Phi Beta Sorority recognizing plaintiff for his outstanding service to Wilberforce University and to the sorority dated February 18, 1988.

On May 6, 2006, Plaintiff has also submitted a supplement to his response in opposition to defendants motion for summary judgment (doc. 97 & 98). In his supplemental response, plaintiff maintains that he has provided additional evidence showing that he was a good teacher who demonstrated good character, dedication, and commitment to education. Plaintiff attached the following documents to his supplemental response:

- Exh. A: An April 12, 2006 reference letter from Emmett C. Orr, an Associate Dean for Wright State University;

- Exh. B: A May 2, 2006 reference letter from Robin Moore-Cooper, an Educational Support Services Coordinator for Sinclair Community College;

- Exh. C: An undated reference letter from Trina M. Walker;

- Exh. D: A May 3, 2006 reference letter from Susie Crawford, retired Springfield City Schools teacher;

- Exh. E: An undated reference from Christina Bowser;

- Exh. F: A May 3, 2006 affidavit from Rick Seeds;

- Exh. G: A purported affidavit from Mrs. Audrey White. The document was prepared by plaintiff, and the affiant did not attest to the validity of the information or have her signature notarized;

- Exh. H: A purported affidavit from William A. Everson. The document was prepared by plaintiff, and the affiant did not attest to the validity of the information or have his signature notarized;

- Exh. J: A purported affidavit from Rhonda Black. The document was prepared by plaintiff, and the affiant did not attest to the validity of the information or have her signature notarized;

- Exh. K: An affidavit from David Lane. The notary does not indicate that David Lane signed the document in her presence;

- Exh L: An affidavit from Ken Marcum. The notary does not indicate that Ken Marcum signed the document in her presence;

- Exh. M: An affidavit from William Denman. The notary does not indicate that William Denman signed the document in her presence;

- Exh. N: An affidavit from Derrick Jarrett. The notary does not indicate that Derrick Jarrett signed the document in her presence; and,

- Exh. O: An affidavit from Horace Hill. The notary does not indicate that Horace Hill signed the document in her presence.

Plaintiff also attached a purported affidavit of Cessili R. Slaughter-Scarver to his August 14, 2006 motion (doc. 101), but the document was prepared by plaintiff, and the affiant did not attest to the

validity of the information or have her signature notarized, Plaintiff later submitted a notarized copy of Cessili R. Slaughter-Scarver's affidavit to the Court.

Summary Judgment. Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

validity of the information or have her signature notarized, Plaintiff later submitted a notarized copy of Cessili R. Slaughter-Scarver's affidavit to the Court.

Summary Judgment. Summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original); *Kendall v. The Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467 (1962); accord, *County of Oakland v. City of Berkeley*, 742 F.2d 289, 297 (6th Cir. 1984).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) (footnote omitted). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1158 (6th Cir. 1980).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448 (1872)). As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his . . . [pleadings] in opposition to a properly supported motion for summary judgment against him." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259 (1968)(footnote omitted).

Discussion.  At this stage of the proceedings, Gilbert's § 1981 claims against the individual defendants are the only remaining claims. Section 1981 states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. The elements of a *prima facie* case under § 1981 are the same for those in a Title VII action. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). However, § 1981 differs from Title VII in some respects. Under § 1981, the plaintiff must demonstrate purposeful discrimination. *General Building Contractor's Association, Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982). Unlike Title VII, under § 1981 a defendant can be held individually liable for discrimination, but "[t]o establish individual liability, the individual defendant must have been personally involved in the discriminatory action." *Allen v. Ohio Department of Rehabilitation and Correction*, 128 F. Supp. 2d 483, 495 (S.D. Oh. 2001).  Finally, the doctrine of respondeat superior does not apply in § 1981 cases.  *Allen*, 128 F. Supp. 2d at 495; *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

Wrongful Termination/Failure to Promote. Plaintiff initially bears the burden of establishing a *prima facie* case of employment discrimination.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  A plaintiff can establish a *prima facie* case of discrimination by showing by a preponderance of the evidence: (1) that he is a member of a protected group; (2) that he was subject to an adverse employment decision; (3) that the employer took an adverse employment action against him despite his qualifications; and (4) that he was treated less favorably than a similarly situated person outside of the plaintiff's protected class.

12

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). A plaintiff may satisfy the fourth element by showing "that similarly situated non-protected employees were treated more favorably than the plaintiff." *Talley v. Bravo Pitino Restaurant, Ltd*, 61 F.3d 1241, 1246 (6th Cir. 1995).

If the *prima facie* case is established, the employer must articulate a legitimate, non-discriminatory reason for the termination. *See McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden of production then shifts to the plaintiff to show that the proffered reason is a pretext for discrimination. *See id.* at 804. The plaintiff at all times retains the burden of persuading the fact finder that he has been the victim of intentional discrimination. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Gilbert has failed to establish a *prima facie* case of discrimination for his discipline and subsequent termination because he has not identified any similarly situated comparable employee.

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated *in all respects. Stotts v. Memphis Fire Department,* 858 F.2d 289 (6th Cir.1988). Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original).

In his deposition of defendant Lamneck and his affidavits submitted to the Court, Gilbert attempts to show that he was treated less favorably than non-minorities in the manner that discipline was imposed. But Gilbert fails to identify any individuals who can be considered similarly situated. Gilbert elicited testimony from Lamneck regarding her discipline of Major Smith and Deputy

13

Wardens Brown and Smith. Lamneck Dep. 6-7. Major Smith, however, was disciplined for failing to properly discipline other staff and inform her of an investigation. *Id.* at 8. The staff who were apparently improperly disciplined had been playing cards. *Id*. But neither of these examples of employee misconduct are comparable to plaintiff's. Defendants produced evidence showing that plaintiff was disciplined for being tardy, falsifying his daily segregation log, requesting sick leave without having adequate leave, violating the dress code, being insubordinate, failing to follow post orders, failing to carry out a work assignment, using obscene language and derogatory remarks toward a co-worker, and secretly recording disciplinary proceedings. *See* Defs. Exhs. 11, 13-20, 22-23, 25.

Plaintiff also referred to an incident involving Captain Riley, Lieutenant Turjanica, Officers Atwood and Edwards, and Nurse Conkel transporting a naked inmate to a mental health facility. *Id*. at 69-72. This incident also does not share any similarity to the circumstances surrounding plaintiff's discipline and termination. Plaintiff provided no evidence showing that these other employees had the same supervisor, were subject to the same standards, and engaged in the same conduct when compared with his treatment.

In the alternative, plaintiff has not produced any evidence that defendant Lamneck was personally involved in the alleged discriminatory action. *See Allen v. Ohio Department of Rehabilitation and Correction*, 128 F. Supp. 2d 483, 495 (S.D. Oh. 2001). Because Lamneck was not personally involved in the alleged conduct, plaintiff's claims against her fail as a matter of law. Gilbert testified in his deposition that he did not recall whether Lamneck was involved in any of the incidents alleged in the complaint. Gilbert Dep. 154. Gilbert also testified that he did not

14

remember whether he complained to or sought help from either Lamneck or Fausnaugh with respect to his claims of alleged discrimination. *Id*. at 146-47.

With respect to plaintiff's allegation that he was denied a position as a teacher with Corrections Reception Center although he was more qualified than the applicant selected, defendant Lamneck's uncontroverted testimony was that the Ohio Central School System decided who to hire. *Id*. at 59. Although plaintiff submitted evidence that he applied for promotions at ODRC, Gilbert has not offered any evidence that suggests defendant Lamneck or Fausnaugh took any part in any of the decisions to not promote plaintiff.

<u>Hostile Environment</u>. Gilbert has not produced any evidence that directly or indirectly shows that either of the remaining defendants unlawfully discriminated against him because of his race. Gilbert has not produced sufficient evidence to establish a claim for a hostile work environment. To establish a hostile environment *prima facie* case, plaintiff must show that (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) employer liability exists. *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir. 1999). Although Gilbert maintains that he was disciplined or targeted because of his race, he has not submitted any admissible evidence suggesting a racial motivation for the discipline he received.

Gilbert maintains that having his cake confiscated shows that he worked in a hostile work environment, but at his deposition, Gilbert did not remember the particulars of the cake being confiscated. Gilbert Dep. 147. Defendant Fausnaugh testified at his deposition that Gilbert was called in to meet with him regarding an investigation, and Gilbert brought a sheet cake to the

15

meeting. Warden Saunders was concerned that Gilbert could have adulterated the cake in some manner and requested that Fausnaugh confiscate the cake so that it could be tested. The cake was never tested due to expense and was returned to Gilbert. Gilbert was not disciplined regarding this matter. Fausnaugh further testified that the relationship between Gilbert and management had become so strained that they simply did not trust that the cake was offered with good intentions. Fausnaugh Dep. 23-45. Gilbert merely asserts that racial animus was the basis for confiscating his cake, but there has been no evidence submitted to support this claim, other than plaintiff's pure conjecture.

<u>Retaliation</u>. Similarly, Gilbert has not produced sufficient evidence to establish a claim for retaliation for exercising his rights his under Title VII or § 1981. To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in protected activity; (2) this exercise of protected rights was known to defendants; (3) defendants took adverse employment action; and, (4) there was a causal connection between the protected activity and the adverse employment action. *See Hafford v. Sedner*, 183 F. 3d 506, 515 (outlining elements of retaliation claim in the context of Title VII). Here, plaintiff has not provided any evidence that he was engaged in protected activity prior to either being disciplined or being discharged from employment. Plaintiff also has failed to provide any admissible evidence demonstrating a causal connection between any protected activity and an adverse employment action.

Furthermore, Gilbert simply has not produced any evidence, which if found credible by the finder of fact, would be admissible and relevant to his claims of employment discrimination. In his deposition, Gilbert was unable to provide testimony with any specificity regarding his allegations. As noted earlier, he did not recall the details surrounding the cake incident. He asserted that

16

defendants failed to follow the administrative rules of ODRC or CRC, but Gilbert was not able to identify any rules that were not followed. Nor was he able to recall if he complained to a supervisor when rules were violated. Gilbert Dep. 68 & 70. Aside from the defects in the manner in which many of the affidavits were executed,[2] the documents submitted by plaintiff primarily contain hearsay[3] or statements concerning plaintiff's good character.[4] Although plaintiff provided

---

[2]As noted above, several affidavits were signed and attested to by Gilbert, rather than the individual purporting to provide the affidavit.

[3]For instance, Mrs. Audrey White's affidavit contains the following:
7.  Based on incidents, events or situations Gilbert shared with (sic), Do you believe Gilbert received treatment by management, and supervisors, that was inappropriate and not an acceptable practice by the Department of Correction?

    Based on information shared. (sic) I believe it was inappropriate.
    . . .
9.  Are you aware of a cake being confiscated from Gilbert, and an Investigation being held accusing him of putting unknown poisons or bodily fluids in the cake, aimed at harming white supervisors? Please state any information you are aware of.

    Aware of what he told me.

Pl.'s Exh. G.

[4]Plaintiff provided numerous character reference letters and other documents demonstrating his accomplishments and activities. These documents, however, are simply irrelevant to this case.  Many of the purported affidavits submitted by plaintiff contained similar passages to the following question and response:
49.  Based on your supervision of Gilbert, and knowledge of his education, character, personality and demeanor; do you believe he would attempt to poison, kill, or otherwise cause harm to a supervisor, administrator or co-worker, by putting poison or bodily fluids into a cake, than (sic) give it to them to consume?

     I don't believe he would commit such a crime.

Pl.'s Exh. K.

17

statements such as William A. Everson's purported affidavit which stated that a "white officer would get a slap on the hand, but Mr. Gilbert would always go to a discipline process and receive more punishment," an allegation such as this, without supporting facts, is not sufficient to survive defendants' motion for summary judgment. Pl.'s Exh. H.

<u>Conclusion</u>.    For the reasons stated above, plaintiff Michael S. Gilbert's August 30, 2006 motion for reconsideration (doc. 104) is DENIED, and defendants Ginny Lamneck and John Fausnaugh's February 9, 2006 motion for summary judgment (doc. 82 in case no. 2:04-cv-13 and doc. 24 in case no. 2:04-cv-158) is GRANTED. The Clerk of Court is DIRECTED to enter JUDGMENT for defendants. This action is hereby DISMISSED.

It is SO ORDERED.

s/ James L. Graham<br>James L. Graham<br>United States District Judge

Date:   September 29, 2006